1
2
3
4
5
6
7
8

9          UNITED STATES DISTRICT COURT

10         SOUTHERN DISTRICT OF CALIFORNIA

11

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | Civil No.11cv0032 AJB (POR) |
| Plaintiff, | ) ) | CONSENT ORDER OF PERMANENT INJUNCTION AND CIVIL PENALTIES |
| v. | ) ) | AGAINST INCREASE INVESTMENTS, |
| INCREASE INVESTMENTS, INC., SPIRIT INVESTMENTS, INC., AND SCOTT BOTTOLFSON, | ) ) ) ) | INC., SPIRIT INVESTMENTS, INC., AND SCOTT BOTTOLFSON |
| Defendants. | ) ) ) | |

18    On January 7, 2011, Plaintiff U.S. Commodity Futures Trading Commission (the "Commission"

19  or "CFTC") filed a Complaint against Defendants Increase Investments, Inc. ("Increase"), Spirit

20  Investments, Inc. ("Spirit"), and Scott Bottolfson ("Bottolfson") (collectively, "Defendants").  The

21  Complaint seeks injunctive relief and civil monetary penalties for violations of the Commodity

22  Exchange Act ("Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No.

23  110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101 - 13204, 122 Stat.

24  1651, to be codified at 7 U.S.C. §§ 1 et seq.

25              I.  CONSENTS AND AGREEMENTS

26    To effect settlement of the matters alleged in the Complaint in this action prior to a trial on the

27  merits or further judicial proceedings, Increase, Spirit, and Bottolfson:

28

1

11cv0032

1.     Consent to the entry of this Consent Order of Permanent Injunction and Civil Penalties ("Order");

2.     Affirm that they have read and agreed to this Order voluntarily, and that no threat or promise, other than as set forth specifically herein, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce their consent to this Order;

3.     Acknowledge service upon them of the summons, Complaint, and this Order;

4.     Admit this Court's personal and subject matter jurisdiction over them and this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006);

5.     Admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006);

6.     Waive:

    a.     all claims that may be available to them under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and Part 148 of the Regulations, 17 C.F.R. §§ 148.1, et seq. (2010), relating to, or arising from, this action and any right pursuant to EAJA to seek costs, fees and other expenses relating to or arising from this action;

    b.     any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-207 (2007), relating to, or arising from, this action;

    c.     any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief;

    d.     all rights of appeal in this action;

7.     Agree and consent to this Court's jurisdiction and inherent authority to enforce this Consent Order and Permanent Injunction;

8.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint, or creating, or tending to create the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect their (i) testimonial

11cv0032

1   obligations; or (ii) right to take legal positions in other proceedings to which the Commission is not a
2   party.  Bottolfson shall take all steps necessary to ensure all of his agents and employees comply with
3   this provision.  Each remaining Defendant shall take all steps necessary to ensure all of its agents and
4   employees comply with this provision;

5          9.      Neither admit nor deny the allegations of the Complaint or the Findings of Fact and
6   Conclusions of Law contained in this Order, except as to jurisdiction and venue, which they admit.
7   However, they agree and intend that the allegations of the Complaint and all of the Findings of Fact and
8   Conclusions of Law contained in this Order shall be taken as true and correct and be given preclusive
9   effect, without further proof, in the course of any subsequent action to enforce the terms of this Order
10   and any bankruptcy proceeding filed by, on behalf of, or against him.  No provision of this Order shall
11   in any way limit or impair the ability of any person to seek any legal or equitable remedy against the
12   Defendants, or any other person in any other proceeding;

13          10.     Agree to provide immediate notice to this Court and the CFTC by certified mail of any
14   bankruptcy proceeding filed by, on behalf of, or against them;

15          11.     Agree that they will provide notice to this Court and the CFTC by certified mail of any
16   change to their contact telephone number(s) and/or mailing address(es) within ten (10) calendar days of
17   the changes(s); and

18                              II.  FINDINGS AND CONCLUSIONS
19   A.     FINDINGS OF FACT
20   Plaintiff

21          1.      Commodity Futures Trading Commission is a federal independent
22   regulatory agency that is charged by Congress with the administration and enforcement
23    of the Act, as amended, 7 U.S.C. §§ 1 et seq., and the Regulations promulgated there under, 17 C.F.R.
24   §§ 1.1 et seq. (2010).
25   Defendants

26          2.      Increase Investments, Inc. is incorporated in Reno, Nevada.  Its address is 5190 Neil
27   Road, Suite 430 Reno, NV 89502.  Increase has never registered with the Commission in any capacity,
28   however it acted as a commodity pool operator.  Scott Bottolfson and his wife Lori Bottolfson are the

11cv0032

only officers of the corporation.  Increase Investments, Inc. is owned by Spirit Increase Revocable Trust ("SIRT").  Increase Investments, Inc. opened its first futures trading account in March of 2002.  The account was opened with R.J. O'Brien, a registered futures commission merchant ("FCM").  Increase operates a single pool, the Increase Investments, Inc. pool ("Increase pool").

3.      Spirit Investments, Inc. is an NFA member commodity pool operator ("CPO") with a business address of 619 South Vulcan Ave., Suite 103, Encinitas, CA 92024.  It is registered in Delaware.  Scott Bottolfson is the President of Spirit Investments, Inc.  Lori Bottolfson is the only other principal (she does not have a title).  Spirit Investments, Inc. operates a single pool, Kingship Commodities Group, LP ("Kingship").  Spirit Investments, Inc. is owned by SIRT.

4.      Scott Bottolfson resides in Encintas, California.  Bottolfson is an officer in Increase Investments, Inc. and Spirit Investments, Inc.  Bottolfson is registered with NFA as an associated person of Spirit Investments, Inc.  He is also a principal and agent of Spirit Investments, Inc.  Bottolfson is the "initial Trustee" of SIRT.

Formation of the Pools

5.      Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2006), defines a "commodity pool operator" as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and in connection therewith, has solicited, accepted or received funds, securities or property from others for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

6.      During the relevant period, Bottolfson solicited pool participants to trade in two commodity pools, through his companies, Increase and Spirit.  Bottolfson pooled various individuals' funds for the purpose of trading commodity futures and options on futures with the pooled funds.

7.      Bottolfson solicited a total of approximately $14 million from pool participants. The transfers of funds from participants to the pools were executed through the use of promissory notes with Bottolfson informing the participants that the funds would be traded in futures and options on futures.

8.      From approximately 2002, Bottolfson solicited to trade on behalf of pool participants.  The pool participants included approximately thirty individuals, all or most of whom were Bottolfson's

family and friends.  Bottolfson claimed he was pooling the participants' funds to trade in futures and options on futures.

9.     Bottolfson traded some of the participants' funds in commodity futures accounts at FCMs in the names of Increase and Kingship.

10.     Defendants returned to pool participants approximately $7 million of the approximately $14 million solicited from pool participants.  Defendants currently owe the remaining $6,813,462.51 in principal to pool participants.

11.     Throughout the relevant period (approximately 2002 through August 2010), when Bottolfson accepted funds from pool participants for purposes of trading in the Increase pool, Increase was not registered or listed in any capacity with the Commission, nor was Bottolfson registered as an associated person of Increase.

Fraudulent Solicitations

12.     As noted above, during the relevant period, Bottolfson solicited approximately $14 million from approximately thirty participants.  The funds were solicited to invest in commodity pools to trade futures and options on futures.  However, only about $2.97 million was actually put into commodity pool trading accounts.  The rest was put into Bottolfson's personal accounts, used in a Ponzi scheme, or deposited somewhere other than commodity pool trading accounts.

13.     Bottolfson made the following false or misleading representations in his solicitations:

a.     he promised a fixed rate of return of approximately 20% in commodity futures;

b.     he claimed that trading commodity futures was risk free;

c.     he claimed that pool participants were protected by something similar to the FDIC's protection provided to bank customers;

d.     he claimed that the pool was profitable when it was not;

e.     he sent money to the pool participants, identifying the money as principal and profits when in fact it was other participants' money;

f.     he claimed that the pool participants' principal was guaranteed; and

g.     he claimed he was a successful trader and that his trading was profitable.

14.     Bottolfson omitted the following material facts from his solicitations:

     a.     he failed to disclose that he was using participants' funds for his personal use, including depositing funds provided to him by pool participants into his personal accounts;

     b.     he failed to disclose that the pools were losing money on trading commodity futures; and

     c.     he failed to disclose that he was using pool participants' funds to pay principal and purported profit returns to existing pool participants in a manner typical of a Ponzi scheme.

15.     Spirit and Increase, through their agent and employee Bottolfson, acted as CPOs. As such, Spirit and Increase owed fiduciary duties to pool participants. They were obligated to disclose all material information to participants. Pool participants would have found it important to learn that the pools were not profitable, that participant funds were being misappropriated for Bottolfson's personal use, and that Bottolfson used pool participant funds to pay principal and purported profit returns to existing pool participants in a manner typical of a Ponzi scheme. Consequently, Increase and Spirit should have disclosed this material information. Failure to provide this information is a material and fraudulent omission.

16.     Bottolfson knew that his solicitations were untrue, and/or that they were made in reckless disregard of their truthfulness because:

     a.     he controlled the money that pool participants provided to the Defendants;

     b.     he controlled the pools' trading accounts;

     c.     he knew that he was placing only a fraction of the participants' funds into trading accounts;

     d.     he knew that he was using pool participants' funds to pay principal and purported profit returns to existing pool participants in a manner typical of a Ponzi scheme; and

     e.     he personally solicited the participants on his own behalf and on behalf of the other Defendants.

Misappropriation

17.     Instead of trading pool participant funds as promised, Bottolfson used pool participant funds to repay principal and pay purported profitable returns to existing pool participants in a manner typical of a Ponzi scheme.

11cv0032

18.   Bottolfson solicited a total of approximately $14 million to be traded in the Increase and Kingship commodity futures pools.  Instead of trading the pool participant funds as promised, Bottolfson deposited only approximately $2.97 million into trading accounts.  The remaining $11.03 million was deposited into Bottolfson's personal accounts.  There it was used for his personal expenses and to pay pool participants what Bottolfson alleged was capital and profits in the manner of a Ponzi scheme, or was otherwise misappropriated.  Of the $2.97 million deposited into trading accounts, Bottolfson lost approximately $845,000 trading.

19.   Bottolfson knew that he was misappropriating participant funds because he personally solicited funds, managed the pools' trading accounts, deposited the funds into personal accounts, sent participant funds to other participants claiming that the funds were interest or profit on investments, and used funds that were to be traded for purposes other than trading.

20.   Throughout the relevant period, Bottolfson was an employee or agent of Increase and Spirit, and acted within the scope of his employment or agency.  He was an officer of Increase and the President of Spirit.  He conducted the day-to-day business of Spirit and Increase.  In these roles, he was acting as an employee or agent of Increase and Spirit within the scope of his employment or agency when he fraudulently solicited pool participants by making false or misleading representations, fraudulently solicited pool participants by making material omissions, misappropriating pool participant funds through a Ponzi scheme and by depositing pool funds in his personal bank accounts.

B.   CONCLUSIONS OF LAW

21.   This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order there under.

22.   Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), in that Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

11cv0032

23.     It is a violation of the Act, as amended by the CRA, for any person, in or in connection with any order to make, or the making of, any on-exchange futures contract, for or on behalf of any other person: (i) to cheat or defraud or attempt to cheat or defraud such other person; or (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act or agency performed with respect to such order or contract for such person.  Sections 4b(a)(2)(i) and (iii), 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006) (with respect to conduct before June 18, 2008); and Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C) (with respect to conduct on or after June 18, 2008).

24.     By the conduct described in II.A. above, Bottolfson knowingly, or with reckless disregard for the truth, violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), with respect to acts occurring on or after June 18, 2008, by, among other things, (1) omitting material information, including the fact that he was misappropriating pool participant funds; (2) falsely representing that the Defendants were generating profits from trading on behalf of the pool and pool participants; (3) misappropriating pool participant funds by using such funds to pay principal and purported returns to other pool participants; and (4) misappropriating pool participant funds.

25.     By the conduct described in II.A. above, Spirit and Increase, through Bottolfson, acted as CPOs for the Kingship and Increase pools, respectively, by soliciting, accepting or receiving funds from others and engaging in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodities for future delivery on or subject to the rules of a contract market.  During the relevant period, Bottolfson acted as an associated person of these two CPOs.

26.     By the conduct described in II.A. above, Bottolfson employed a device, scheme or artifice to defraud prospective and existing pool participants, or engaged in a transaction, practice or course of business that operated as a fraud or deceit upon prospective and existing pool participants in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B) (2006), by (1) omitting

11cv0032

material information, including the fact that Bottolfson was misappropriating pool participant funds; (2) falsely representing that Increase was generating profits from its trading on behalf of the pool and pool participants; (3) misappropriating pool participant funds by using such funds to pay principal and purported returns to other pool participants; and (4) misappropriating pool participant funds for personal use.

27.     Bottolfson was acting as an agent of Increase and Spirit when he violated the Act, and, therefore, Increase and Spirit, as his principals, are liable for his conduct alleged in the Complaint pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2010).

III.  PERMANENT INJUNCTION

This Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay.  This Court therefore directs the entry of a permanent injunction and orders Bottolfson, Increase, and Spirit to jointly and severally pay a civil monetary penalty pursuant to Section 6c of the Act, 7 U.S.C. § 13a 1, as set forth herein.

A.     IT IS HEREBY ORDERED that Bottolfson, Increase, and Spirit, along with any of their agents, servants, employees or assigns and persons in concert or participation with them who receive actual notice of this Order by personal service or otherwise, and all other persons or entities served with a copy of this Order, are permanently restrained, enjoined, and prohibited from directly or indirectly:

1.     Employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant, in violation of Section 4o(1) of the Act, including but not limited to, conduct such as that set forth in Section II.A. above; and

2.     in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person-

(A)     cheating or defrauding or attempting to cheat or defraud the other person; [or]

9

(C)    willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contact for or, in the case of paragraph (2), with the other person.

in violation of Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), including but not limited to, conduct such as that set forth in Section II.A. above.

B.    IT IS HEREBY FURTHER ORDERED that Bottolfson, Increase, and Spirit are permanently restrained, enjoined, and prohibited from directly or indirectly:

1.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, to be codified at 7 U.S.C. § 1a);

2.    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Commission Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2010)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and/or 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for any personal or proprietary account or for any account in which they have a direct or indirect interest;

3.    having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

4.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

5.    soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

6.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration

10

11cv0032

1  with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. §

2  4.14(a)(9) (2010);

3        7.     acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R.

4  § 3.1(a) (2010)), agent or any other officer or employee of any person or entity registered, exempted

5  from registration or required to be registered with the Commission, except as provided for in

6  Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010);

7        C.     IT IS HEREBY FURTHER ORDERED that the injunctive provision of this Order shall

8  be binding upon: Bottolfson, Increase, and Spirit; upon any person who acts in the capacity of agent,

9  employee, attorney, and/or assign of Bottolfson, Increase, or Spirit; and upon any person or entity who

10  receives actual notice of this Order, by personal service or otherwise, insofar as he, she, or it is acting in

11  active concert or participation with Bottolfson, Increase, or Spirit.

12                      IV. CIVIL MONETARY PENALTY

13        IT IS HEREBY ORDERED that Bottolfson, Increase, and Spirit shall comply fully with the

14  following terms, conditions and obligations relating to the payment of a civil monetary penalty:

15        A.     CIVIL MONETARY PENALTY

16        1.     Bottolfson, Increase, and Spirit, jointly and severally, shall pay a civil monetary penalty

17  of $6,813,462.51, plus post-judgment interest.  Post-judgment interest shall accrue on the civil monetary

18  penalty obligation beginning on the date of entry of this Order and shall be determined by using the

19  Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

20        2.     Bottolfson, Increase, and Spirit shall pay this civil monetary penalty by electronic funds

21  transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If

22  payment is to be made other than by electronic funds transfer, the payment shall be made payable to the

23  Commodity Futures Trading Commission and sent to the address below:

24  Commodity Futures Trading Commission

25  Division of Enforcement

26  Attn:  Marie Bateman - AMZ-300

27  DOT/FAA/MMAC

28  6500 S. MacArthur Blvd.

1  Oklahoma City, Oklahoma 73169

2  Telephone: 405-954-6569

3       If payment is to be made by electronic funds transfer, Bottolfson, Increase, and Spirit shall

4  contact Marie Bateman or her successor at the above address to receive payment instructions and shall

5  fully comply with those instructions.  The paying Defendants shall accompany payment of the penalty

6  with a cover letter that identifies the paying Defendant and the name and docket number of the

7  proceedings.  The paying Defendants shall simultaneously transmit copies of the cover letter and the

8  form of payment to the Director, Division of Enforcement, Commodity Futures Trading Commission,

9  Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, and the Chief, Office of

10  Cooperative Enforcement, at the same address.

11       B.       PRIORITY OF MONETARY SANCTIONS AND PARTIAL PAYMENTS

12       1.       Defendants shall pay the civil monetary penalty obligation after Defendants have paid the

13  restitution obligation ordered in the related criminal action.  See United States of America v. Scott

14  Bottolfson, Case No. 10CR4734 JM, S.D. Ca. 2010, "Judgment In A Criminal Case", DE No. 34,

15  attached as Exhibit A.

16       2.       Any acceptance by the Commission of partial payment of Bottolfson, Increase, and

17  Spirit's civil monetary penalty shall not be deemed a waiver of the respective requirement to make

18  further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel

19  payment of any remaining balance.

20

21

22

23

24            V.  MISCELLANEOUS PROVISIONS

25  IT IS FURTHER ORDERED THAT:

26       1.       Jurisdiction: This Court has the inherent authority to enforce this Consent Order and

27  Permanent Injunction.

28

11cv0032

2. Interpretation and Enforcement:  This Order shall be interpreted and enforced according to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of California, and all provisions of the Act and Regulations, relating or referring to the obligations hereunder.

3. Notices:  All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

Attention - Director of Enforcement

Commodity Futures Trading Commission

Division of Enforcement

1155 21st Street N.W.

Washington, DC 20581

4. Waiver:  The failure of any party to this Order or of any participant/investor at any time to require performance of any provision of this Order shall in no manner affect the right of the party or participant/investor to enforce the same or any other provision of this Order at a later time.  No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

5. Acknowledgements:  Upon being served with a copy of this Order after entry by this Court, Bottolfson, Increase, and Spirit shall sign an acknowledgment of service and serve the acknowledgment on this Court and the CFTC within seven (7) calendar days.

6. Invalidation:  If any provision or the application of any provision of this Order is held invalid, the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

7. Entire Agreement and Amendments:  This Order incorporates all of the terms and conditions of the settlement among the parties hereto.  Nothing shall serve to amend or modify this Order in any respect whatsoever, unless:  (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

11cv0032

8.      Authority: Scott Bottolfson hereby warrants that he is the sole officer and director of Increase and Spirit, and that this Consent Order has been duly authorized by Increase and Spirit and he has been duly empowered to sign and submit this Consent Order on behalf of Increase and Spirit.

9.      Counterparts and Facsimile Execution.  This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Agreement that is delivered by facsimile, e-mail, or any other means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Agreement.

IT IS SO ORDERED.


DATED:  October 13, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge




Consent Order of Permanent Injunction and Civil Penalties Against Increase Investments, Inc., Spirit Investments, Inc., and Scott Bottolfson, consented to and approved for entry by:

s/ Scott Bottolfson (with permission)
                                                                Dated: October 6, 2011
Scott Bottolfson, Individually


s/ Scott Bottolfson (with permission)
                                                                Dated: October 6, 2011
Scott Bottolfson, on behalf of Increase Investments, Inc.

s/ Scott Bottolfson (with permission)
                                                                Dated: October 6, 2011
Scott Bottolfson, on behalf of Spirit Investments, Inc.

11cv0032

1    s/ Jason A. Mahoney

2                         Dated: October 6, 2011
3    Jason A. Mahoney, Es                              q.
     Attorney for Plaintiff
4    U.S. Commodity Futures Trading Commission
     1155 21st Street, N.W.
5    Washington, DC 20581

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                          11cv0032